## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **LINDA STREET, M.D.,** | * | **CIVIL ACTION NO:** |
| | * | |
| Plaintiff | * | **SECTION:** |
| | * | |
| vs. | * | **JUDGE:** |
| | * | |
| **AU HEALTH SYSTEM, INC. d/b/a** | * | **MAGISTRATE:** |
| **AU MEDICAL CENTER f/k/a MCG HEALTH,** | * | |
| **INC. AND PHILLIP L. COULE, M.D.,** | * | |
| | * | |
| Defendants | * | **DEMAND FOR JURY TRIAL** |
| | * | |

### COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES, INCLUDING DEMAND FOR JURY TRIAL

Plaintiff, Linda Street, M.D., brings this action against Augusta University Medical Center, Inc. ("AUMC" or "Hospital"); MCG Health, Inc., AU Health System, Inc.; and Phillip L. Coule, M.D., Vice President and Chief Medical Officer at AU Health System, Inc. (hereinafter collectively referred to as "Defendants"), and alleges upon personal knowledge as follows:

1.

### JURISDICTION AND VENUE

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the constitution or laws of the United States, including the Health Care Quality Improvement Act (HCQIA) codified at 42 U.S.C. § 11101. Additionally, pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Plaintiff's state law claims, as these federal and state claims form part of the same United States Constitution Article III case or controversy.

2.

Venue is proper in the United States District Court for the Southern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in the judicial district and substantially all of the events or omissions giving rise to these claims occurred in this judicial district.

**PARTIES**

3.

Linda Street, M.D. (sometimes hereinafter referred to as "Plaintiff Physician" or "Plaintiff") is a person of the full age of majority, duly licensed to practice medicine without restriction by the Georgia Composite Medical Board, domiciled in the County of Columbia, State of Georgia and substantially engaged in the practice of medicine in the County of Richmond, State of Georgia.

4.

Made defendant herein is AU Health System, Inc. d/b/a AU Medical Center primarily conducting business and located in the county of Richmond, State of Georgia, which may be served through its registered agent for service of process, E. L. Clark Speese, 1120 15th Street, BA-8255, Augusta, Georgia, 30912.

5.

Made defendant herein is Phillip L. Coule, M.D., a person of the full age of majority and Vice President-Chief Medical Officer for AU Health System at all pertinent times herein, who may be served at 165 McBride Road, Martinez, Georgia, 30907.

**FACTS COMMON TO ALL COUNTS AND DAMAGES**

6.

To introduce and summarize Plaintiff Physician's Complaint: This is an action for damages for mental anguish, humiliation, embarrassment, loss of professional reputation, defamation, and loss of income through Defendants' intentional abuse of their rights, breach of their obligations created by its own Medical Staff Bylaws and the Healthcare Quality Improvement Act, and violation of Plaintiff's due process rights.  As more fully described below, Defendants knowingly fabricated untrue, and unsupported violations identified under its Medical Staff Bylaws and physician on-call coverage protocols and used same to summarily suspend Plaintiff's medical staff privileges at AUMC effective June 25, 2019.  Shortly thereafter, and in violation of The Healthcare Quality Improvement Act and its own Bylaws, Defendants knowingly made a false report to the National Practitioner Data Bank (NPDB) which has, is and will continue to cause Plaintiff to suffer damages including mental anguish, irreparable harm to her professional reputation, loss of income, and loss of future employment.

7.

By way of background, Plaintiff Physician received her medical degree from the Medical College of Georgia School of Medicine in 2009.  After medical school, Plaintiff successfully completed a four (4) year OBGYN residency program at Greenville Memorial Hospital from 2009-2013 and successfully completed a three (3) year fellowship in Maternal Fetal Medicine (hereinafter referred to as "MFM") at Wake Forest University from 2013-2016.   Plaintiff is a licensed and doubly board-certified Obstetrician Gynecologist with sub specialization in Maternal Fetal Medicine.  Following her fellowship

Plaintiff became employed by AU Medical Center and awarded medical staff privileges to same effective August 15, 2016. Plaintiff's employment status and medical staff privileges were dependent to each other and ran concomitantly.

8.

On May 1, 2019, Plaintiff formally resigned her employment at AUMC by tendering her sixty (60) day notice of employment resignation with her last day of employment to be June 30, 2019. At the time of her resignation on May 1, 2019, Plaintiff was neither under an investigation nor any suspension of any kind regarding her medical staff privileges at AUMC.

9.

On June 19, 2019, Dr. Lawrence Devoe, the interim MFM section Chief announced that the MFM section would no longer provide phone call coverage or a physical call presence at night and on the weekends at AUMC. Dr. Devoe instructed the OB generalist faculty to provide this coverage for AUMC. Both Plaintiff and Dr. Chadburn Ray, the OB generalist section Chief, were in attendance for this meeting. Nevertheless, both Drs. Browne and Street intended to remain available to the OB generalist by telephone through the end of their employment, in this instance for Plaintiff, her employment was scheduled to end on June 30, 2019.

10.

On or about June 25, 2019, Plaintiff received a letter from Phillip L. Coule, MD Vice President and Chief Medical Officer of AU Health System, informing her *"Information has recently come to our attention to cause concern for the safety of our patients under your care. As such, your privileges to practice medicine and surgery in Obstetrics and*

*Gynecology is hereby suspended and access to the AU Medical Center, Children's Hospital of Georgia, AU Medical Associates and its affiliated practice sites is hereby revoked."*

11.

Plaintiff's suspension and revocation of medical staff privileges from AUMC resulted from a complaint by Chadburn Ray, MD, a generalist OBGYN, who alleged Plaintiff left town while on weekend call for the Maternal Fetal Medicine (MFM) service at AUMC without making appropriate arrangements to cover her call responsibilities.

12.

In accordance with the MFM section Chief and Chief of OB services, Paul Browne, M.D., the adopted and acceptable on-call coverage protocol for MFM section in June 2019 was twenty-four (24) hour availability for phone consultation as MFM physicians were not required to perform in person call.  As set forth in the AUMC Medical Staff Bylaws (hereinafter "Bylaws"), "appropriately privileged professional coverage" for MFM patients is required when "the responsible physician is unavailable."  Such coverage prior to the Plaintiff's alleged misconduct had been provided by MFM physicians by phone with an in-house OB generalist physician present in person at AUMC.

13.

With Dr. Browne on personal leave, Plaintiff was scheduled to provide on-call coverage for MFM on June 21-23, 2019; however, on June 19, 2019, Plaintiff via email notified her supervisor, Dr. Browne, that she unexpectedly had to be out of town at that time because her mother was having surgery.  Plaintiff also notified her administrative assistant by email on June 19, 2019 that she would be out of town on personal leave, and

both Dr. Browne and Dr. Coule were forwarded same.  Dr. Browne approved Plaintiff's absence and she agreed to provide 24-hour phone coverage for MFM while on personal leave.

14.

Despite making "appropriate arrangements" for coverage of MFM patients in accordance with AUMC standards, policies and Bylaws, and in fact answering multiple calls from the hospital between June 21-23, 2019, Plaintiff's medical staff privileges were revoked on June 25, 2019 for "leaving town while on weekend call for the Maternal Fetal Medicine (MFM) service at AUMC without making appropriate arrangements to cover her call responsibilities."

15.

As a consequence, because of the summary suspension of Plaintiff's medical staff privileges, under Article V, Section 5.1 of the AUMC Medical Staff Bylaws states immediately following suspension of a physician's privileges a determination must be made by the Chief Medical Officer and Service Chief within seventy-two (72) hours if any corrective action should be initiated.  At no time within that 72-hour window was a determination made to initiate corrective action against Plaintiff, and the failure to do so automatically reinstated Plaintiff's medical staff privileges under the Bylaws.

16.

Nevertheless, with blatant disregard for its own Bylaws and after Plaintiff's employment ceased on June 30, 2019 following her May 1, 2019 resignation, Defendants proceeded to sanction Plaintiff by forming an Ad Hoc Investigation Committee several weeks later consisting of Dr. Natasha Savage, Lynn Allmonde, PA, Dr. Bunja Rungruang,

and Dr. Barbara Henley.  The Investigation Committee interviewed Plaintiff on July 16, 2019 and shortly thereafter issued a preliminary report, which Plaintiff did not receive until August 14, 2019.  Plaintiff was provided the opportunity to respond to the preliminary report within fifteen (15) days upon receipt, and she did so by drafting a letter to the Investigation Committee dated August 28, 2019.  Attached to her response was an affidavit from her supervisor, Dr. Paul Browne, attesting to Plaintiff's appropriate efforts to arrange on-call coverage while she was on personal leave, and such efforts were in accordance with the approved protocols for arranging coverage for MFM patients at AUMC.  To date, Plaintiff has not received anything from AUMC regarding the outcome of the Ad Hoc Committee's investigation, its referral of its findings to the Medical Executive Committee of the hospital, and the Medical Executive Committee recommendations to the Board of the hospital.

17.

Because the Medical Staff was conducting itself as if the Medical Staff Bylaws of AUMC were in effect for Plaintiff, Plaintiff sought to avail herself to the due process rights under the Medical Staff Bylaws by requesting a Fair Hearing through written correspondence to Dr. Coule, dated October 9, 2019.

18.

By written correspondence dated October 23, 2019, Mr. E. L. Clark Speese, Interim General Counsel and Risk Manager of AU Health System, Inc., denied Plaintiff's request for a Fair Hearing, stating:

> As there has been no action taken with respect to the investigation of the Ad Hoc Committee, there is no appealable decision.

Meaning, because Plaintiff's employment and medical staff privileges expired on June 30, 2019, the due process rights provided under the Medical Staff Bylaws were not available to Plaintiff.

19.

The next notification regarding Defendants' suspended privileges was from the National Practitioners' Data Bank (NPDB) reflecting a report of action taken on June 25, 2019 stating that Plaintiff's clinical privileges at AUMC had been permanently suspended. In a letter from Defendants' general counsel, E. L. Clark Speese, AUMC reported Plaintiff to the NPDB as required under 42 U.S.C.S. § 11133(1) alleging Plaintiff resigned both her employment and privileges effective June 30, 2019 while under investigation and suspension.  Said allegation by AUMC is a false statement known by the Defendants' to be false at the time the report was submitted to the NPDB.

20.

The filing of the NPDB report was done by Defendants with malicious intent to cause harm to Plaintiff because she did not resign her privileges at AUMC while under investigation or in lieu of any suspension or investigation.   Additionally, Plaintiff's summary suspension only lasted five (5) days, June 25, 2019 to June 30, 2019, due to her May 1, 2019 resignation which was to take effect on June 30, 2019.  Despite the fact that her alleged suspension lacks cause and merit, Plaintiff's suspension lasted less than thirty (30) days dismissing the need for any corrective action or filing of a NPDB report.

21.

Defendants' concerted efforts, led by Phillip L. Coule, M.D., to single out Plaintiff for disciplinary action was clearly done in retaliation for her voluntarily resigning her

employment with AUMC on May 1, 2019 to pursue her medical career with another medical facility.  Defendants' actions reveal the improper bad faith and illegal motive for their actions against the Plaintiff, and violates the Health Care Quality Improvement Act, judicially enforceable agreements between the parties, and due process protections among other state and federal laws.

22.

The facts stated above highlight the arbitrary, capricious, blatant efforts, false accusations, and bad faith actions of Defendants to single out and terminate Plaintiff's medical staff privileges at AUMC in retaliation against Plaintiff for legally pursuing other career opportunities.  Defendants' lack of procedure and methods utilized to evaluate Plaintiff, including failing to notify her of any corrective action with in the mandated 72-hour period following suspension of her privileges, violated their obligations created by the Health Care Quality Improvement Act and its own Medical Staff Bylaws to conduct in good faith a fair and unbiased investigation of the quality of care Plaintiff provided to her patients.

23.

Defendants' actions of reporting Plaintiff to the NPDB has adversely impacted Dr. Street financially, thereby causing her injury and damages.  The presence of the NPDB report has caused and will continue to cause Plaintiff to suffer loss of professional standing and significant loss of earnings capacity and income, including future income, irreparable damage to Plaintiff's reputation, defamation, and general damages.

## COUNT I

### VIOLATIONS OF THE HEALTH CARE QUALITY IMPROVEMENT ACT, HOSPITAL MEDICAL STAFF BYLAWS, AND PLAINTIFF'S DUE PROCESS RIGHTS

24.

The Defendants violated Plaintiff's due process rights afforded to her by AUMC's Medical Staff Bylaws and by the applicable provisions of the United States Constitution, the Health Care Quality Improvement Act codified at 42 U.S.C. § 11101, *et seq* and Georgia Constitution when they acted in a malicious, bad faith manner towards Plaintiff as follows and as set forth above in numbered paragraphs 1 through 23:

a)   Failure to conduct a reasonable factual inquiry, reasonable development, and review of all pertinent facts and MFM Department policies prior to the Defendants' summarily suspending Plaintiff's medical staff privileges on June 25, 2019;

b)   Failure to conduct a reasonable factual inquiry, reasonable development, and review of all pertinent facts prior to the Defendants' reporting any adverse actions against Plaintiff to the NPDB in June 2019; obtaining Plaintiff's position relative to the findings and conclusions reached; and investigating Plaintiff's findings and conclusions prior to acting unfavorably towards Plaintiff and reporting her to the NPDB;

c)   The Bylaws as accepted and agreed by and between Plaintiff and AUMC establishes a judicially enforceable agreement wherein Plaintiff is entitled to injunctive relief upon Defendants' noncompliance with or breach of its obligations set forth in its Bylaws.  AUMC failed to comply with and violated its own Bylaws as set forth above in this Complaint, as well as the following

manners: 1) by engaging in an illegal, concerted effort to suspend, restrict, modify, fail to renew and/or terminate Plaintiff's medical staff privileges at AUMC; 2) by failing to comply with due process and equal protection requirements such as failing to give timely notice of any adverse action taken against Plaintiff by Defendants; 3) by fabricating untrue violations and allegations of professional misconduct; 4) by failing to review or consider the overwhelming and dispositive evidence and opinions, including the opinion of AUMC's own Chief of Maternal Fetal Medicine section, Paul C. Browne, MD exonerating Plaintiff of the allegedly failing to make appropriate arrangements to cover her call responsibilities; 5) reporting Plaintiff to the NPDB with knowledge of the falsity of information contained in the report; and 6) other additional breaches to be established at trial.

25.

The foregoing breaches of Defendants' Bylaws and the Health care Quality Improvement Act by the Hospital and MEC have caused and will continue to cause Plaintiff to suffer loss of professional standing and significant loss of earnings capacity and income, including future income, irreparable damage to Plaintiff's reputation, and general damages.

## COUNT II

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND DEFAMATION

26.

This is an action for general damages for the infliction of severe emotional distress, mental anguish, loss of professional reputation, embarrassment against the Defendants. Defendants' conduct at all pertinent times herein towards Plaintiff was malicious,

outrageous, and extreme as follows and set forth above in the numbered paragraphs 1 through 25 and as follows:

a) Defendants acted in a very ill advised, malicious, bad faith, and hasty manner when they took and reported to the NPBA the adverse actions against Plaintiff in June 2019 when Defendants knew or should have known that such actions were in clearly reckless, malicious disregard of the facts and evidence, in particular knowing Plaintiff had resigned her employment and medical privileges on May 1, 2019 while not under investigation or suspension.

b) Defendants have defamed Plaintiff by pursuing false and unsupported violations against Plaintiff causing her general damages and damages to Plaintiff's personal and professional reputation and good standing with the medical community.

c) Defendants have compounded their defamation of Plaintiff by posting a negative report about Plaintiff in the National Practitioner's Data Bank with knowledge of the falsity of information contained in the report.

### COUNT III

#### BAD FAITH BREACH AND VIOLATIONS OF MEDICAL STAFF BYLAWS

27.

This is an action for general damages including mental anguish, humiliation, and embarrassment directly resulting from the Defendants' bad faith and intentional breach of its Medical Staff Bylaws in contravention of their duty of good faith imposed upon their obligations as follows and as set forth above in numbered paragraphs 1 through 26.

28.

In accordance with the HCQIA and its own Medical Staff Bylaws and Credentials Bylaw, Defendants' intentionally and in bad faith breached its obligations by the direct interference and involvement of AUMC CEO, the MEC, and other members and employees of AUMC to fabricate unsupported accusations and medical violations against Plaintiff; and by reporting Plaintiff to the NPDB knowing of the falsity of information contained in the report.

29.

Defendants' unjustified interference with Plaintiff's medical staff privileges at AUMC, particularly suspending and ultimately terminating Plaintiff's privileges constitutes an intentional bad faith violation of Defendants' obligations set forth in AUMC Medical Staff Bylaws.  Such actions by Defendants have caused pecuniary and non-pecuniary damages to Plaintiff in the form of embarrassment, mental anguish, and humiliation, as well as continuing damage to Plaintiff's professional reputation.  Defendants are liable to Plaintiff for pecuniary, compensatory, and general damages for the bad faith breach of contract caused by Defendants' unjust and bias efforts to terminate Plaintiff's medical staff privileges.

## COUNT IV
### ABUSE OF RIGHTS AND MISREPRESENTATION

30.

This is an action in damages for mental anguish, humiliation, embarrassment, loss of professional reputation, and loss of income for defendant's intentional abuse of its rights as follows and as set forth above in numbered paragraphs 1 through 29.

31.

Defendants' bad faith actions referred to in this Complaint constitute an abuse of Plaintiff's rights because Defendants have intentionally manipulated and continue to manipulate the requirements under 42 U.S.C.S. § 11133(a) which states as follows:

> A hospital must report to the National Practitioners' Database whenever it accepts the surrender of clinical privileges of a physician while the physician is under investigation by the entity relating to possible incompetence or improper professional conduct;

> Professional review actions taken by health care entities against physicians that adversely affects the clinical privileges of said physician for a period longer than thirty (30) days is a reportable event to the NPDB.[1]

Defendants' actions have damaged Plaintiff's reputation and earnings capacity without cause. The actions of the Defendants to report Plaintiff to NPDB were taken without a legitimate motive or basis and done with clear knowledge of the falsity of information they submitted in the report and against the thirty (30) day threshold for reportable events. Additionally, one or more of the Defendants have made distorted misrepresentations in bad faith or failed to consider the facts and research presented by the Plaintiff prior to reporting Plaintiff to the NPDB, causing her harm and irreparable damages. As such, Defendants' actions constitute an abuse of rights and misrepresentations under the Health care Quality Improvement Act, its own Bylaws, and state and federal law. Because of their knowledge of the falsity of information in their report to the NPDB, Defendants can be held liable under civil action with respect to the report made to the NPDB.[2]

---

[1] 42 U.S.C.S. § 11133(1); See also *Lee v. Hosp. Auth. Of Colquitt County*, 353 F. Supp. 2d 1255 (M.D. GA 2004); and *Walker v. Mem'l Health Sys. Of E. Texas et al.*, 231 F. Supp.3d 210, 217 (E.D. Tex 2017).
[2] *Id*. See also 42 U.S.C.S. § 11137(c).

32.

As a result of the Defendants' conduct,  Plaintiff has suffered and will continue to suffer damages for which she is entitled to recover money damages jointly, severely and in solido over and against Defendants for the  acts described above, in numbered paragraphs 1 through 31 which damages consist of, but are not limited to, the following:

      A.     Past, present, and future pain and suffering;

      B.     Past, present, and future mental pain, anguish, and suffering;

      C.     Past, present, and future loss of enjoyment of life;

      D.     Past, present, and future loss of earnings; and

      E.     Loss of earning capacity;

**WHEREFORE**, Plaintiff prays Defendants be duly cited with a summons and this Complaint and after due proceedings have been had the Court enter judgment against Defendants, and in favor of Plaintiff as follows:

1) Preliminary and Permanent Injunctive Relief against AUMC and all other Defendants from adversely impacting or endeavoring to adversely impact, suspend, revoke or terminate Plaintiff's medical staff privileges at AUMC, or reporting any of the pending violations or decisions related to such violations against Plaintiff to the National Practitioner's Data Bank or any other entity or person;

2) Additional Injunctive Relief ordering AUMC to remove from its records and the National Practitioner's Data Bank all documents/reports related to the adverse actions against Plaintiff;

3) Enter a judgment declaring AUMC has violated Plaintiff's rights and that AUMC's professional violations/allegations and any resulting suspension or other adverse action against Plaintiff be withdrawn and declared revoked, null and void;

4) Actual, general, and compensatory damages, including damages for lost income, past and future, against Defendants jointly, severely and in solido for intentional infliction of emotional distress, breach of contract, violation of constitutional rights, defamation, damage to reputation, and abuse of rights in an amount of money damages that are reasonable under the premises;

5) Reasonable costs and attorney's fees for instituting and maintaining this action, including judicial interest from the date of demand; and

6) All other legal and equitable relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully submitted:
BEAHM & GREEN

Franklin D. Beahm  (GA Bar #943449)
145 Robert E. Lee Boulevard, Suite 400
New Orleans, Louisiana 70124
Telephone:   (504) 288-2000
Email:        frank@beahm.com
Attorneys for Linda Street, M.D.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **LINDA STREET, M.D.,** | * | **CIVIL ACTION NO:** |
| | * | |
| Plaintiff | * | **SECTION:** |
| | * | |
| vs. | * | **JUDGE:** |
| | * | |
| **AUGUSTA UNIVERSITY MEDICAL** | * | **MAGISTRATE:** |
| **CENTER, INC., MCG HEALTH, INC., AND** | * | |
| **AU HEALTH SYSTEM, INC.,** | * | |
| | * | |
| | * | **DEMAND FOR JURY TRIAL** |
| | * | |
| Defendants | * | |
| | * | |

## VERIFICATION OF PLAINTIFF

**STATE OF GEORGIA**
**COUNTY OF COLUMBIA**

> **BEFORE ME**, the undersigned Notary Public, personally came and appeared

### LINDA STREET, M.D.

who, after being duly sworn, did depose and state:

> All of the allegations of fact contained within the above and foregoing Complaint for Injunctive Relief, Declaratory Judgment and Damages, Including Demand for Jury Trial, are true and correct to the best of my information, knowledge, and belief.

_____
LINDA STREET, M.D.

SWORN TO AND SUBSCRIBED
before me, Notary Public, this
____ day of _____, 2020.

_____
NOTARY PUBLIC
Bar/Notary ID:____
My Commission Expires_____

ADAM TOLSON
NOTARY
★
PUBLIC
EXP. 06-27-2020
RICHMOND COUNTY, GA